**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17 CV 58**

| | |
|---|---|
| **JEWELL RAMOS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| **AAA OF THE CAROLINAS (a/k/a** ) | |
| **CAROLINA MOTOR CLUB, INC.),** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Pending before the Court is the Motion to Dismiss [# 5]. Plaintiff brought this action in the Superior Court of Henderson County asserting state law claims for fraud, fraud based on omission, defamation of character, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of the covenant of good faith and fair dealing. Additionally, Plaintiff asserted federal law claims for wrongful termination in violation of the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*, and wrongful termination in violation of the Family Medical Leave Act. 29 U.S.C. § 2601 *et seq*. Defendant removed the action to the Western District of North Carolina. Defendant then filed a Motion to Dismiss, which the District Court referred to this Court. Accordingly, Defendant's motion is now before this Court for a Memorandum and Recommendation to the District

Court. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss and dismiss Count One and Count Seven of Plaintiff's Complaint.

## I. Background

Plaintiff Jewell Ramos is a resident of Henderson County, North Carolina and, before her termination, she was employed as a travel agent by Defendant AAA of the Carolinas (Pl.'s Compl. ¶¶ 1, 4–6.) Defendant AAA is a corporation licensed in North Carolina and compensates its travel agents with a salary of thirty-three percent of their commissions. (Id. ¶¶ 2, 7.) Ms. Susan Ledford was the regional manager for Defendant and Ms. Wendy Gritzmacher was Plaintiff's immediate supervisor. (Id. ¶ 13.) Ms. Cindy Perry was an employee of Defendant and Plaintiff's coworker. (Id. ¶ 29.) Ms. Amanda McDeavitt was an employee of the Defendant in the Asheville office. (Id. ¶ 43.)

While employed by Defendant, Plaintiff was a top producing travel agent receiving notoriety for her travel packages to Mexico. (Id. ¶¶ 5–6.) Defendant had a policy where it was to provide a monthly accounting of an agent's sales to the agent. (Id. at ¶ 8.) Plaintiff knew of this policy and repeatedly tried to obtain an accounting when Defendant had failed to provide one. (Pl.'s Compl. ¶¶ 4–6.) Thus, Plaintiff was not able to cross reference her income with her sales. (Id. ¶¶ 5–6.)

In February, 2015, Plaintiff was diagnosed with breast cancer for which she had surgery, six months of chemotherapy, and three months of radiation. (Id. ¶ 11.) Because Plaintiff was a single mother of two, she wished to work for Defendant through her chemotherapy and radiation. (Id. ¶ 12.)

On July 27, 2017, one month into Plaintiff's chemotherapy, Ms. Ledford and Ms. Grizmacher told Plaintiff that she had to go on medical leave. (Id. ¶¶ 13, 15.) While Plaintiff did not believe her work had suffered while undertaking chemotherapy, Plaintiff acquiesced and asked for two weeks to finalize her recent bookings. (Id. ¶¶ 16, 19.) Ms. Ledford and Ms. Grizmacher initially agreed to allow Plaintiff two weeks to catch up on recent work. (Pl.'s Compl. ¶¶ 19–20.) Later that day, however, a disagreement between Plaintiff and Ms. Grizmacher over a commission led Ms. Grizmacher to give Plaintiff only two days before she was to go on leave. (Id. ¶¶ 21–26.) That same afternoon, Plaintiff left work for a radiation treatment and afterward contacted Defendant's human resources department to put herself on medical leave. (Id. ¶¶ 27–28.)

While at home that evening, Plaintiff's daughter returned from school and "appeared strange." (Id. ¶ 29.) Plaintiff's daughter informed Plaintiff that Ms. Perry had contacted her to tell her that her mother had "flipped out at work," that Plaintiff was dangerous, and that she should not go home. (Id.) Attempting to

resolve this issue, Plaintiff repeatedly contacted Ms. Ledford to try and set up a face-to-face meeting that night at 9:00 pm at the Hendersonville office. (Id. ¶¶ 30–32.) Plaintiff went to the office at 9:00 pm. (Id. at ¶¶ 32–33). Instead of showing up, Ms. Ledford contacted police to have Plaintiff removed. (Pl.'s Compl. ¶¶ 32–34.) While Plaintiff was being removed, Ms. Perry seized Plaintiff's office key. (Id. at ¶ 35.)

At 10:00pm that same evening, police arrived at Plaintiff's home to commit Plaintiff to the psychiatric ward at Margaret R. Pardee Memorial Hospital. (Id. at ¶ 36.) Plaintiff did not go willingly and attempted to convey that she was a cancer patient. (Id. at ¶¶ 37–38). Plaintiff was given a copy of the Affidavit and Petition for Involuntary Commitment (Id. at ¶ 39.) (Def.'s Ex. B 22–24). Plaintiff noted that Ms. Perry was the petitioner and alleges that the Affidavit and Petition contained "several untruths." (Pl.'s Compl. ¶¶ 39–40.) Plaintiff was committed overnight and the next afternoon was discharged after seeing a psychiatrist. (Id. at ¶ 42.)

On July 28, 2017, Ms. McDeavitt called Ms. Ledford to ask about Plaintiff. (Id. at ¶ 43.) Ms. Ledford told her that Plaintiff had a nervous breakdown. (Id. at ¶44.) Ms. McDeavitt told Ms. Ledford that Plaintiff had been discharged and Ms. Ledford stated, "What? They promised us that they would keep her at least 72

hours!" (Id. at ¶ 44.)

On July 30, 2017, Plaintiff contacted Ms. Gritzmacher to arrange to pick up her personal effects, a rolodex and a briefcase, at the office. (Id. at ¶ 48.) Ms. Gritzmacher told Plaintiff that she was banned from the office and that she would need to pick up her effects after business hours. (Id. at ¶ 49.) Not having been given a specific date, on August 12, 2015, Plaintiff went to the office with her daughter. (Id. at ¶ 50.) Plaintiff's daughter went into the office to retrieve Plaintiff's property but was only given the rolodex. (Id. at ¶ 51.) Plaintiff then attempted to enter the office to retrieve the briefcase. (Id. at ¶ 51.) Ms. Ledford came out and told Plaintiff that she could not have her briefcase. (Pl.'s Compl. ¶¶ 53–54.) Then, Plaintiff contacted the police told them that Ms. Ledford had refused to give Plaintiff her personal property. (Id. at ¶¶ 54–55.) After the police arrived, Ms. Ledford accused Plaintiff of stealing from Defendant in front of other employees. (Id. at ¶ 56.)

On August 13, 2015, Plaintiff received a termination letter from Defendant citing that Plaintiff had "intruded on the AAA office with unruly and disturbing conduct." (Id. at ¶¶ 57–58.) Plaintiff's health insurance was cancelled immediately and Plaintiff had to withdraw funds from her 401K to help offset costs. (Id. at ¶¶ 60, 62.)

On December 10, 2015, Plaintiff filed a complaint for wrongful termination with the EEOC and subsequently retained a lawyer. (Id. at ¶¶ 61, 63.)

Defendant filed their Motion to Dismiss on March, 6, 2017. On March 20, 2017, Plaintiff filed her first Motion for Extension of Time to Reply [# 7]. The Court granted the motion. On April 2, 2017, Plaintiff filed her second Motion for Extension of Time to Reply [# 10]. The Court granted the motion. On May 5, 2017, Plaintiff filed her third Motion for Extension of Time to Reply [# 13] this time as a pro se plaintiff. The Court granted the motion. On May 24, 2017, Plaintiff filed her fourth Motion for Extension of Time to Reply [# 17], stating that she needed more time to find representation. The Court granted the motion.

On August 14, 2017, the Court ordered Plaintiff to respond to the Motion to Dismiss by August 28, 2017, clearly stating that no further extensions would be given. On August 25, 2017, Plaintiff filed her fifth Motion to Extend Time to Reply [# 21]. The Court denied the motion. The Court now evaluates Defendant's Motion to Dismiss [# 5] without a reply from Plaintiff.

**II.   Legal Standard**

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendant's motion, the Court accepts the allegations in

the Complaint as true and construes them in the light most favorable to Plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190–92.  Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007); see also Consumeraffairs.com, 591 F.3d at 256.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  Nor will mere labels and legal conclusions suffice.  Id.  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.  See also Consumeraffairs.com, 591 F.3d at 255.  The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss.  Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193.  Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible.  Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Where, a party's allegations sound in fraud, however, the allegations must also satisfy the heightened pleading standards of Rule 9.  Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008); Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud.  Cozzarelli, 549 F.3d at 629.  A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b).  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).

### III. Analysis

### A. Defendant's Motion to Dismiss Count One

1. <u>Fraud</u>

Court One of Plaintiff's Complaint asserts two claims, one for fraud and one for fraud based on omission. (Pl.'s Compl. ¶¶ 71–74.) Regarding the fraud claim, Defendant contends that Plaintiff has failed to plead the elements of a fraud claim, as required by 12(b)(6) of the Federal Rules of Civil Procedure. If the Court finds that Plaintiff has pled the elements of fraud, Defendant contends that Plaintiff has failed to plead her claim with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

In order to assert a claim of fraud in North Carolina, a plaintiff must allege facts supporting each element of a fraud claim, including: (1) the false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) made with the intent deceive plaintiff; (4) that does in fact deceive plaintiff; and (5) results in damage to plaintiff. <u>Ragsdale v. Kennedy</u>, 209 S.E.2d 494, 500 (N.C. 1974) (setting forth the elements of a general fraud claim).

In addition to alleging factual allegations supporting each element of a fraud claim, a party must also plead the circumstances of fraud with particularity. Fed. R. Civ. P. 9(b). As the Fourth Circuit has explained:

> We have elaborated that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation. Id.; see also U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc., 707 F.3d 451, 455–56 (4th Cir. 2013).

McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013). See also Ross v. Gordon & Weinberg, P.C., No. 3:09cv482, 2011 WL 3841549, at *4 (W.D.N.C. Aug. 30, 2011) (Cogburn, J.).

Plaintiff's fraud claim fails the 12(b)(6) hurdle because Plaintiff does not allege that she was deceived. Plaintiff's fraud claim centers on Ms. Cindy Perry, an alleged agent of Defendant, providing an affidavit to a Henderson County Judge who in turn ordered police to detain Plaintiff for involuntary commitment. (Pl.'s Compl. ¶¶ 36–45, 74.) Plaintiff alleges that Ms. Perry's affidavit contained "several untruths." (Id. at ¶ 39.) Yet, while Ms. Perry's affidavit may have deceived the judge, the police, and the staff at Margaret R. Pardee Memorial Hospital, the affidavit did not deceive Plaintiff. In order to allege a claim of fraud, Plaintiff must aver that *she* was deceived. Because Plaintiff has not alleged that

she was deceived, Plaintiff has not successfully pled a claim of fraud that satisfies Fed .R. Civ. P. 12(b)(6). Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to the fraud claim.

    2. Fraud Based on Omission

The second claim within Count One of Plaintiff's Complaint is fraud based on omission. (Pl.'s Compl. ¶¶10, 72–73.) Defendant contends that Plaintiff has failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

In order to satisfy Rule 9(b) for a claim of fraud by omission, a plaintiff is required to allege: (1) there was a relationship or situation that gave rise to the duty to speak by a defendant(s); (2) the event or events the triggered the duty to speak, or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant(s) gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from the reliance. Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997) (setting forth the elements of fraud based on omission); see Frank M. McDermott, Ltd. V. Moretz, 898 F.2d 418, 421 (4th Cir. 1990).

Plaintiff's claim falls short on two elements: (6) Plaintiff did not allege that she relied on the omission and that reliance was reasonable and detrimental; and (7) Plaintiff did not allege any damages flowing from that reliance. Plaintiff knew about Defendant's omission and overtly did not rely on it. Plaintiff asked multiple times for an accounting and felt misguided as a result. Plaintiff did not put any trust into Defendant's omission. Additionally, Plaintiff did not allege that she suffered damages as a result from the fraud by omission. Plaintiff sought the accounting so that she might check her paycheck's accuracy. While Plaintiff asks for $78,316.00 of back pay in her conclusion, she does not connect that number with the fraud or show how that number flowed from the fraud. The Court, therefore, **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to the fraud by omission claim.

**B.     Defendant's Motion to Dismiss Count Seven**

1. <u>Breach of the Convent of Good Faith and Fair Dealing</u>

Court Seven of the Complaint asserts a claim for breach of the covenant of good faith and fair dealing. (Pl.'s Compl. ¶¶ 94–95.) Defendant contends that Plaintiff has failed to plead a claim for which relief can be granted.

North Carolina is an employment-at-will state. See Coman v. Thomas Mfg. Co., Inc., 381 S.E.2d 445, 446–47 (N.C. 1989). An at-will employee is defined as

an employee without a definite term of employment. Id. at 446. The result is that a North Carolina employer may terminate an at-will employee, or an at-will employee may quit, with no reason. Id. at 447; Salt v. Applied Analytical, Inc., 412 S.E.2d 97, 99 (N.C. App. 1991). There is one exception to North Carolina's employment-at-will doctrine: when the termination contravenes public policy. Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 168 (N.C. 1992) (finding that a business violated public policy "by firing plaintiffs for refusing to work for less than the statutory minimum wage"). While other states have recognized wrongful discharge exceptions based on theories of bad faith or the implied covenant of good faith and fair dealing, the North Carolina Supreme Court has emphasized that it has not recognized either theory. Id. at 173.

Plaintiff's does not allege, and the complaint does not support an inference, that Plaintiff was more than an at-will employee or that she had a written contract showing a definite term of employment. Therefore, Plaintiff is an at-will employee. As stated above, North Carolina does not recognize a claim for termination based on a breach of the covenant of good faith and fair dealing or bad faith. Amos at 173. Plaintiff's claim is therefore not cognizable under North Carolina law.

Thus, the Court **RECOMMENDS** that the District Court **GRANT** the

Motion to Dismiss at to the breach of the implied covenant of good faith and fair dealing claim because it is not a cognizable claim under North Carolina law.

## IV. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss and dismiss Count One and Count Seven of Plaintiff's Complaint.

Signed: October 31, 2017

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk to forward a copy of the Memorandum and Recommendation to Plaintiff Jewell Ramos, 63 Fickley Drive, Hendersonville, NC 28792 and to counsel of Defendant.